UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Catalina Lighting, Inc., *et al.*,[1]

Debtors.
_____/

Chapter 11

Case No. 10-14786-RAM

(Jointly Administered)


NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES AND SCHEDULING
FINAL SALE HEARING RELATED THERETO


**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.  On the evening of _____ ("Petition Date"), the above-captioned debtors and debtors in possession (collectively, "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"). On _____, the Debtors filed a motion ("Sale Motion") with the Bankruptcy Court seeking, among other things, an order of the Bankruptcy Court (a) approving that certain Asset Purchase Agreement ("Purchase Agreement"), dated January ____, 2010, by and among the Debtors, as sellers, and Evolution Lighting, LLC, as buyer ("Stalking Horse Bidder"), for the purchase and sale of the Purchased Assets (as defined in the Purchase Agreement); (b) establishing bidding procedures for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests ("Bidding Procedures"); (c) authorizing the Debtors to provide certain stalking horse bid protections to the Stalking Horse Bidder; (d) scheduling a hearing to consider approval of the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests pursuant to the Purchase Agreement to the Stalking Horse Bidder or the highest and best bidder, if applicable, at an Auction ("Sale Hearing"), (e) authorizing the Debtors' assumption and assignment of certain executory contracts and unexpired leases in connection therewith at the Sale Hearing, and (f) approving the form and manner of notice thereof.

---

[1] The Debtors are the following two (2) entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Catalina Lighting, Inc., a Florida corporation (8266); and Catalina Industries, Inc., a Florida corporation (4785).  The address of each of the Debtors is 18191 NW 68th Avenue, Hialeah, FL 33015.

2. The Purchase Agreement contemplates the sale of the Purchased Assets to the Stalking Horse Bidder, subject to higher or better offers made pursuant to the Bidding Procedures.

3. A hearing on the portion of the Sale Motion dealing with the Bidding Procedures and the related bid protections for the Stalking Horse Bidder was held before the Bankruptcy Court on _____, 2010, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures set forth in the Sale Motion ("Bid Procedures Order") (D.E. # __).

4. A copy of the Bid Procedures Order is attached hereto as Annex 1. The Bid Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold. All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 4:00 p.m. Prevailing Eastern Time on _____, 2010 ("Initial Bid Deadline").

5. **THE COMPLETE BIDDING PROCEDURES ARE ATTACHED AS EXHIBIT A HERETO.**

6. The Sale Hearing is currently scheduled to be conducted on _____ (Eastern Time) at the Courtroom 14__ of the United States Bankruptcy Court, 51 S.W. First Avenue, Miami, Florida 33131 before the Honorable _____, United States Bankruptcy Judge, to consider the approval of the Purchase Agreement or any higher or better offer by a Successful Bidder (as defined in the Sale Motion). If the Stalking Horse Bidder is the Winning Bidder, the Debtors anticipate seeking entry of a Sale Order on the terms described in the Sale Motion and the Purchase Agreement ("Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

7. **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER TOGETHER WITH THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT, AND SERVED SO AS TO BE ACTUALLY RECEIVED NO LATER THAN 12:00 P.M. EASTERN TIME ONE (1) BUSINESS DAY PRIOR TO THE SALE HEARING; PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE STALKING HORSE BIDDER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

8. **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 7 ABOVE ON EACH OF THE FOLLOWING PARTIES:**

      i.      Debtors' Counsel, Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Peter Levitt, Esq., Fax: (305) 415-9847, email: plevitt@shutts.com;

      ii.     Stalking Horse Bidder's counsel, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E. MacWright, Esq., Fax: (305) 358-5744, email: tmacwright@whitecase.com

9. The Sale Order, if approved, shall authorize the assumption and assignment of various executory contracts and unexpired leases that are the property of the Debtors (collectively, "Designated Agreements"). In accordance with the Sale Procedures Order, additional individual notices setting forth the specific Designated Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and the proposed cure amounts for such contracts will be given to all counterparties to Designated Agreements.

10. The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the sale transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures, the Sale Motion, the Auction, the sale of the Purchased Assets, the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims, encumbrances and interests).

11. This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:_____

SHUTTS & BOWEN LLP
*Proposed Attorneys for Debtors-in-Possession*
1500 Miami Center
201 S. Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile : (305) 415-9873

By: */s/ Peter H. Levitt*
Peter H. Levitt
Florida Bar No. 650978
Stephen P. Drobny
Florida Bar No. 55732

EXHIBIT A

BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") shall govern the sale and auction of certain of the assets and/or business operations of Catalina Lighting, Inc., Catalina Merchandising, Inc., Catalina Industries, Inc., Meridian Lamps, Inc., The Shetland Company, Inc., and Tensor Corporation (collectively referred to as the "Debtors") to Evolution Lighting, LLC or its nominee (the "Stalking Horse Bidder") or any competing bidder. These Bidding Procedures have been approved and authorized by order dated March ___, 2010 (the "Procedures Order") of the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in the jointly administered chapter 11 cases of the Debtors (Case No. 10-14786-RAM). Capitalized terms, used herein but not separately defined, shall have the meanings ascribed to such terms in that certain Purchase Agreement by and between the Stalking Horse Bidder and the Debtors dated February 25, 2009 (the "Agreement").

1. <u>Property to be Sold</u>. Pursuant to the Agreement, the Stalking Horse Bidder has agreed to purchase all of the Debtors' right, title and interest in, to and under all of the properties, assets and other rights (other than the Excluded Assets) which constitute the Purchased Assets as defined in the Agreement. As provided in the Procedures Order, the sale of the Purchased Assets (the "Asset Sale") is subject to a determination of which entity is the Winning Bidder (as defined in Section 9 below). The Stalking Horse Bidder shall be treated as a Qualified Bidder (as defined in Section 3 below), and the Agreement shall be treated as a Qualified Bid (as defined in Section 5 below), for all purposes under the Bidding Procedures.

2. <u>Due Diligence</u>. Upon receipt by Shutts & Bowen LLP ("<u>Debtors' Counsel</u>") of (i) an executed confidentiality agreement ("<u>Confidentiality Agreement</u>") containing terms substantially similar to the terms set forth in Section 5.8 of the Purchase Agreement; (ii) a completed and executed bidder information sheet (form to be provided upon request), and (iii) evidence satisfactory to the Debtors that the potential bidder is reasonably likely to be able to consummate a purchase of the Purchased Assets, all in form and substance satisfactory to the Debtors in their sole discretion, a potential bidder shall be provided with additional information regarding the Purchased Assets and the Debtors' operations and financial condition, and shall be afforded the opportunity to inspect the Purchased Assets. In addition, all reasonable efforts shall be made to provide a potential bidder, who has satisfied the conditions of this Section 2, with such information as such potential bidder may reasonably determine is necessary or relevant to the formulation of its bid.

**DEBTORS' COUNSEL HAS NOT PREPARED ANY OF THE INFORMATION REGARDING THE DEBTORS, OR ANY OF ITS OPERATIONS, ASSETS OR FINANCIAL CONDITION TO BE PROVIDED TO A POTENTIAL BIDDER IN CONNECTION WITH THE PROCEDURES SET FORTH HEREIN. CONSEQUENTLY, NO REPRESENTATION IS MADE BY THE DEBTORS' COUNSEL REGARDING THE ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THE BIDDING PROCEDURES, AND ALL POTENTIAL BIDDERS ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY**

SUCH INFORMATION.

  3.  <u>Qualified Bidders</u>.

  (a) A potential bidder that satisfies the following requirements, and that the Debtors determine is reasonably likely to be able to consummate a purchase of the Purchased Assets shall be considered a "Qualified Bidder." Within three (3) Business Days of each potential bidder's delivery of all of the material required in subsections (b)(i) through (b)(v) below, the Debtors shall notify such potential bidder in writing as to whether such potential bidder shall be considered a Qualified Bidder.

  (b) Unless otherwise ordered by the Bankruptcy Court for cause shown, no bid for the Purchased Assets will be considered unless prior to or in conjunction with making such bid, the bidder delivers the following items to Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Stephen P. Drobny, Esq.

  (i) An executed confidentiality agreement as provided in Section 2 of these Bidding Procedures;

  (ii) A completed and executed bidder information sheet (to be provided upon request) in form and substance satisfactory to the Debtors in their sole discretion;

  (iii) The most recent financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Purchased Assets, current financial statements of the equity holder(s) of the potential bidder, and such other financial disclosure acceptable to, and requested by, the Debtors, which information shall demonstrate the financial capability of the potential bidder to consummate the purchase of the Purchased Assets (including evidence that the bidder has adequate financing for the transaction), and to provide "adequate assurance of future performance," within the meaning of section 365(f)(2)(B) of title 11 of the Bankruptcy Code of any executory contracts and unexpired leases to be assumed and assigned to such bidder should the potential bidder be the Winning Bidder. If the prospective bidders (or the equity holders of an acquisition entity formed to be a prospective bidder), have financial statements that are audited by outside accountants, the financial statements required hereby shall be audited financial statements. In any event, an authorized representative of the bidder shall certify that the financial statements required hereby are true and correct;

  (iv) Evidence that the potential bidder has the necessary internal authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained; and

  (v) A cashier's check made payable to Shutts & Bowen LLP, as Escrow Agent, or cash paid to Shutts & Bowen, LLP, as Escrow Agent, in an amount not less than $200,000 ("<u>Deposit</u>"). The bidder shall forfeit the Deposit if (i) the bidder is determined to be a Qualified Bidder and withdraws or modifies its bid or any subsequent Increased Bid (as defined below) before the Bankruptcy Court approves the Debtors' selection of the Winning Bidder, and/or (ii) the bidder is determined to be the Winning

5

Bidder and (A) modifies or withdraws the bid or any subsequent Increased Bid without the Debtors' consent before the consummation of the sale contemplated by the Competing Agreement (as defined below) or (B) breaches the Competing Agreement. The Deposit shall be returned to the bidder (i) if the bidder is determined not to be a Qualified Bidder or (ii) if the bidder complies with all of the requirements of the Bidding Procedures and is determined not to be the Winning Bidder.

4. <u>Time for Submission of Bids</u>. Any Qualified Bidder that desires to participate in the Auction (as defined in Section 8 below) shall deliver a copy of its bid not later than 4:00 p.m. Eastern Standard Time on _____, 2010 ("<u>Initial Bid Deadline</u>") to (i) Debtors' Counsel, Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Stephen P. Drobny, Esq., Fax: (305) 415-9847, email: sdrobny@shutts.com; and (ii) Counsel for Evolution Lighting, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E. MacWright Esq., Fax: (305) 358-5744, email: tmacwright@whitecase.com.

The Debtors shall have the right to extend the Initial Bid Deadline once or successively, but not later than to a date which is two (2) Business Days prior to the commencement of the Auction, but shall be under no obligation to do so. In the event the Debtors elect to extend the Initial Bid Deadline, all Qualified Bidders shall be notified promptly of such extension.

5. <u>Form and Content of Bids</u>. To constitute a "Qualified Bid," a bid, other than the bid of Stalking Horse Bidder, must satisfy the following requirements:

(a) The bid must include an executed definitive asset purchase agreement for the purchase of all of the Purchased Assets and assumption of all Assumed Liabilities, which shall be made upon terms and conditions substantially similar to and no less economically favorable to the Debtors then those contained in the Agreement, and must be accompanied by a form of the Agreement that specifically sets forth those amendments and modifications to the Agreement, including price, terms, agreements to be assumed, and liabilities not to be assumed, which such bidder would propose if it were selected as the Winning Bidder ("<u>Competing Agreement</u>"). All modifications or amendments to the Agreement that are contained in the Competing Agreement must be "red lined" or marked in order to be enforceable against the Debtors.

(b) The Competing Agreement must provide for total net consideration consisting of cash, exclusive of the Assumed Liabilities, to the Debtors' estates of not less than an amount equal to the sum of (i) $100,000, (ii) the Senior Debt Amount, and (iii) the Break-Up Fee ($600,000).[2]

(c) The Competing Agreement must not be conditioned on the ability of the bidder to obtain financing, the outcome of unperformed due diligence by the bidder, or any other contingencies (including any working capital adjustments); <u>provided</u>, <u>however</u>, that a bid may be subject to the confirmation of the accuracy and completeness of the specified representations and

---

[2] The Senior Debt Amount totals $3,302,043 as of February 24, 2010. However, the Senior Debt Amount is based on a revolving line of credit and fluctuates on a daily basis. Prior to the Auction, Qualified Bidders may obtain the then current Senior Debt Amount by contacting Debtors' Counsel, Stephen P. Drobny, Esq.

6

warranties in all material respects at the closing of the Asset Sale or the satisfaction of specified conditions in all material respects at the closing of the Asset Sale.  None of such conditions shall be materially more burdensome or unfavorable to the Debtors than those set forth in the Agreement.  Notwithstanding anything herein, the Competing Agreement must provide for the closing of the Asset Sale on a date no later than the date set forth in the Agreement subject to satisfaction of all conditions to closing.

(d) The Competing Agreement does not entitle the bidder to any break-up fee, termination fee or similar type of payment or reimbursement.

(e) A bid will not be considered by Debtors as qualified for the Auction if (1) such bid is not received by Debtors in writing on or prior to the Initial Bid Deadline, or (2) such bid or other information submitted by the bidder does not contain satisfactory evidence that the person submitting it has sufficient financial wherewithal to consummate the purchase contemplated thereby.

(f) The Competing Agreement must identify (i) those executory contracts and unexpired leases of the Debtors which the bidder wishes to have assumed by the Debtors and assigned to it, and (ii) those liabilities which the bidder intends to assume.

(g) The Competing Agreement must be accompanied by a letter affirmatively (i) setting forth the identity of the bidder, the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtors involved in such bid, (ii) stating that the bidder offers to purchase the Purchased Assets upon the terms and conditions set forth in the Competing Agreement, (iii) summarizing the proposed consideration the bidder proposes to pay under the Competing Agreement, (iv) stating the aggregate value of the consideration the bidder proposes to pay under the Competing Agreement (which statement of value shall not be binding on the Debtors or the Bankruptcy Court), and (v) stating the form of the Deposit (*i.e.*, cashier's check, cash or letter of credit) made by the bidder.

(h) The foregoing materials must be received by Debtors' Counsel on or before the Initial Bid Deadline.

6. <u>Distribution of Qualified Bids Prior to Auction</u>.  After the Debtors determine which bids are Qualified Bids, all Qualified Bids, along with the Debtors' determination as to the value of such bids and the discount, if any, that they are applying to such bids as a result of changes to this Agreement or otherwise, will be made available to each Qualified Bidder to allow each Qualified Bidder adequate notice and opportunity to (a) discuss any questions or comments about any Qualified Bids with the Debtors, and (b) prepare an Increased Bid prior to the Auction.  If no Qualified Bids other than the Purchase Agreement are received by the Initial Bid Deadline, no Auction will be conducted, and the Stalking Horse Bidder will be deemed to be the Winning Bidder.  If the Stalking Horse Bidder is the Winning Bidder, the Debtors shall request at the Sale Hearing that the Bankruptcy Court approve the sale of the Purchased Assets to the Stalking Horse Bidder.

7. <u>Notification of Opening Bid</u>.  At the commencement of the Auction, the opening bid will be the Purchase Agreement.

8. <u>The Auction</u>.

(a) If one or more Qualified Bids other than the Purchase Agreement are submitted in accordance with the Bidding Procedures, Debtor's Counsel will conduct an auction ("<u>Auction</u>") to be held on _____, 2010 commencing at ___:___ a.m., Eastern Standard Time. At the Auction, the Debtors shall have the right, in their sole discretion, to select the highest and best bid from the Stalking Horse Bidder or any other Qualified Bidder, subject to the resolution of any dispute by the Bankruptcy Court. The Auction shall take place at the offices of Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131. Only Qualified Bidders may participate in the Auction and they must attend the Auction in person or through an authorized representative or agent with actual authority to participate in the Auction and bind such Qualified Bidder. During the Auction, any Qualified Bidder may increase its Qualified Bid by another Qualified Bid that:

(i) provides for cash consideration that exceeds by not less than $100,000 the cash consideration to be paid pursuant to the then highest Qualified Bid or Increased Bid (as defined below), if any;

(ii) identifies specifically any other changes made to such Qualified Bidder's prior Qualified Bid; and

(iii) satisfies the requirements of Sections 3(b) and 5 above.

Any bid received from a Qualified Bidder during the Auction that satisfies the requirements set forth in subsections (a)(i) through (a)(iii) above shall constitute an "<u>Increased Bid</u>."

(b) Notwithstanding the foregoing, in the event of an Increased Bid, the Stalking Horse Bidder shall be entitled to submit successive overbids and shall be entitled, in the calculation of the amount of the Stalking Horse Bidder's overbids, to credit bid the Break Up Fee and any portion of the amount owed to the Stalking Horse Bidder or its affiliates pursuant to the Second Lien Notes.

(c) The Debtors may adopt such additional and reasonable rules for bidding at the Auction that will better promote the goals of the bidding process, allow all Qualified Bidders reasonable notice and opportunity to submit Increased Bids, and are not otherwise inconsistent with any order of the Bankruptcy Court or these Bidding Procedures.

9. <u>Selection of Winning Bidder</u>. At the Auction, the Debtors shall review and consider each of the Qualified Bids and the Increased Bids, if any. The Debtors shall be the sole arbiters of determining the highest and best offer, and they shall discount offers for additional risks associated with Competing Agreements such as delays in closing, contingencies, additional representations, etc. The highest and best offer shall be determined and announced at the conclusion of the Auction. The bidder making the bid that is selected as the highest and best by the Debtors shall be considered the "<u>Winning Bidder</u>." The Debtors shall announce and inform each of the Qualified Bidders of the decision regarding who is the Winning Bidder on the record of the Auction.

10. <u>Bankruptcy Court Approval of the Winning Bidder</u>. The Bankruptcy Court shall conduct an evidentiary hearing to confirm the results of the Auction, resolve any objections to the manner in which the Auction was conducted, approve the Winning Bidder and direct the Winning Bidder to close on the sale ("Sale Hearing").

11. <u>Additional Deposit if Stalking Horse Bidder is not the Winning Bidder</u>. If the Stalking Horse Bidder is not the Winning Bidder at the Auction, the Winning Bidder shall deliver to Shutts & Bowen, as Escrow Agent, within two (2) Business Days of the Auction, a cashier's check payable to Shutts & Bowen LLP, as Escrow Agent or cash in an amount not less than $500,000 ("<u>Additional Deposit</u>"). Such Winning Bidder shall forfeit the Additional Deposit paid to Debtors if (i) the bidder withdraws or modifies its bid before the Bankruptcy Court approves the Debtors' selection of the Winning Bidder, and/or (ii) Winning Bidder (A) modifies or withdraws its bid without the Debtors' consent before the consummation of the sale contemplated by the Competing Agreement or (B) breaches the Competing Agreement.

12. <u>Failure to Consummate Purchase</u>. The Debtors and the Winning Bidder shall be authorized to effect the sale of the Purchased Assets, or any part thereof, to the Winning Bidder following the entry of the Sale Order without further order of the Bankruptcy Court. If any such failure to consummate the purchase is the result of a breach of the Purchase Agreement or the Competing Agreement by the Winning Bidder, the Deposit of such Winning Bidder shall be forfeited to the Debtors as liquidated damages in accordance with the Purchase Agreement or Competing Agreement.

13. <u>Return of Deposits</u>. Within two (2) Business Days after the entry by the Bankruptcy Court of its order ("<u>Sale Order</u>") approving the Sale of the Purchased Assets to the Winning Bidder, the Deposit submitted by all Qualified Bidders shall be returned, except for those submitted by (i) the Stalking Horse Bidder (if the Stalking Horse Bidder is not the Winning Bidder), in which case the Deposit shall be returned within two (2) Business Days after the Debtors' selection of the Winning Bidder (other than the Stalking Horse Bidder) at the conclusion of the Auction, (ii) the Winning Bidder, in which case the Deposit will be applied to the cash portion of the purchase price set forth in the Purchase Agreement or the Competing Agreement, as the case may be; <u>provided</u>, <u>however</u>, that if the Stalking Horse Bidder is not the Winning Bidder, the Deposit of the Winning Bidder will be applied first towards payment to the Stalking Horse Bidder of the Break Up Fee in accordance with the Purchase Agreement; and (iii) any bidders that forfeit their Deposit under Section 3(b)(v) above. Except as otherwise provided for herein, in the event the Debtors cancel the proposed sale of the Purchased Assets or withdraw the Sale Motion, the Deposit submitted by all Qualified Bidders shall be immediately returned.

14. <u>Business Judgment of the Debtors</u>. The Debtors reserve the right (a) to send copies of these Bidding Procedures together with any other information to any potential interested party; (b) to determine whether the amendments and changes contained in each Competing Agreement are acceptable as terms and conditions to sell; (c) to determine which Qualified Bid, if any, is the highest and/or otherwise best offer; and/or (d) to reject at any time prior to entry of an order of the Bankruptcy Court approving the sale to the Winning Bidder, any bid which the Debtors deem to be (i) inadequate or insufficient, or (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures.