**ORDERED in the Southern District of Florida on** March 11, 2010



_____
Robert A. Mark, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| Catalina Lighting, Inc., *et al.*,[1] | Case No. 10-14786-RAM |
| | (Jointly Administered) |
|     Debtors. | |
| _____/ | |

## ORDER (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES TO BE EMPLOYED IN CONNECTION WITH ASSET SALE; (B) APPROVING BREAK UP FEE; (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER APPROVAL OF THE ASSET SALE; AND (D) APPROVING FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING

Upon the motion, dated February 26, 2010, (the "Bidding Procedures Motion")[2]

of debtors, Catalina Lighting, Inc. ("Catalina") and Catalina Industries, Inc. ("Catalina

---

[1]     The Debtors are the following two (2) entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Catalina Lighting, Inc., a Florida corporation (8266); and Catalina Industries, Inc., a Florida corporation (4785). The address of each of the Debtors is 18191 NW 68th Avenue, Hialeah, FL 33015.

Industries") (collectively, the "Debtors"), for the entry of an order (the "Bidding Procedures Order") (a) authorizing and approving bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale (the "Asset Sale") of substantially all of the assets (the "Assets") of the Debtors to Evolution Lighting, LLC or its designee ("Stalking Horse"), or to any competing bidder, pursuant to 11 U.S.C. §§ 105, 363, 365 and 1146 of title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure 2002(a)(2), 6004 and 6006; (b) approving the Break Up Fee in connection therewith; (c) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Asset Sale; and (d) approving the form and manner of the notice of the Bidding Procedures, Auction and Sale Hearing; and no previous motion for similar relief having been made; and after due deliberation thereon; and sufficient cause appearing therefor, it is

ORDERED that the Bidding Procedures as set forth in Exhibit A annexed hereto are hereby approved; and it is further

ORDERED that the bidding protections in favor of Stalking Horse as set forth in that certain Asset Purchase Agreement by and among the Stalking Horse and the Debtors (the "Agreement"), as amended, including, but not limited to, the Break Up Fee of $300,000, are hereby approved, and the Debtors are hereby authorized and directed to make payment of such Break Up Fee to Stalking Horse whether or not the Stalking Horse elects to submit overbids, pursuant to the terms and conditions set forth in the Agreement; and it is further

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures Motion.

ORDERED that the Break Up Fee (a) constitutes an allowed administrative expense of the Debtors pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (b) be due and payable and paid by the Debtors as provided in the Agreement, without need for any application, motion or further order of the Court; and (c) not be subject to any administrative claims bar date that may be set in the Debtors' chapter 11 cases or any other time limitations for filing; and it is further

ORDERED that in the event of a competing bid, the Stalking Horse will be entitled to submit successive overbids; and it is further

ORDERED that the Auction shall commence and take place on **Thursday, April 8, 2010, at 2:00 p.m. Prevailing Eastern Time** at the United States Bankruptcy Court, Courtroom 1406, 51 S.W. First Avenue, Miami, FL 33130 pursuant to the terms and conditions of this Order; and it is further

ORDERED that the Sale Hearing shall be held before the undersigned United States Bankruptcy Judge immediately upon conclusion of the Auction, at which time the Court shall (i) consider approval of the Asset Sale to Stalking Horse or the bidder providing the best and highest offer for the Assets, (ii) consider the proposed assumption and assignment of executory contracts and leases and related cure claims as provided in the Agreement; (iii) consider any issues or objections that are timely interposed by any parties, and (iv) grant such other or further relief as the Court may deem just or proper; and it is further

ORDERED that upon entry of this Bidding Procedures Order, the Debtors shall, to the extent not already served, serve the Bidding Procedures Order, the Bidding Procedures Motion, including all exhibits thereto, and the *Notice of Proposed Sale of*

*Substantially All of the Debtors' Assets, Free and Clear of Liens, Claims, Interest and Encumbrances* attached hereto as Exhibit B, upon (i) all parties entitled to notice pursuant to Bankruptcy Rule 2002, (ii) all parties who are known to have expressed an interest in acquiring the Assets, (iii) all parties who have asserted a lien or security interest against any of the Assets, and (iv) all parties to the Debtors' executory contracts and unexpired leases as and when identified that will be assumed and assigned in connection with the Asset Sale. The Debtors shall file and serve, not less than five (5) business days prior to the Sale Hearing, a schedule identifying those contracts and leases and corresponding cure amounts (the "Cure Amounts"), if any, that the Debtors may seek to assume and assign to the Stalking Horse (or the Winning Bidder) in connection with the Asset Sale and provide the contracting parties with an opportunity to object to (i) the assumption and assignment, (ii) the Cure Amount, or (iii) both;[3] and it is further

ORDERED that such notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Bidding Procedures Motion, the Auction and the Sale Hearing, and no other or further notice of the Bidding Procedures Motion, the Auction and/or Sale Hearing shall be necessary or required; and it is further

ORDERED that the effective date of any assumption and assignment of any Assumed Contract shall be the date on which the Asset Sale closes. Accordingly, (i) the Stalking Horse (or the Winning Bidder) shall have no liability with respect to any Assumed Contract prior to the date on which the Asset Sale closes, and (ii) any Cure Amounts to be paid under any Assumed Contract will be paid upon the closing of the

---

[3] The Debtors shall have the right to amend such schedule at any time prior to the conclusion of the Sale Hearing, except as otherwise provided in the Agreement which shall govern those contracts and leases to be assumed and assigned to the Stalking Horse.

Asset Sale or as soon thereafter as the Cure Amount is fixed by the Court or agreed by the parties; and it is further

ORDERED that objections, if any, to the Asset Sale shall be filed with this Court and served no later than **4:00 p.m. Prevailing Eastern Time** on ~~March 31~~ April 5, **2010** (the "Objection Deadline") on: (i) Debtors' Counsel, Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Peter Levitt, Esq., Fax: (305) 415-9847, email: plevitt@shutts.com; (ii) Stalking Horse's counsel, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E. MacWright, Esq., Fax: (305) 358-5744, email: tmacwright@whitecase.com; (iii) Wachovia's counsel, Jeffrey Kucera, K&L Gates, 200 South Biscayne Blvd., Suite 3900, Miami, FL 33131 and (iv) the Office of the United States Trustee for the Southern District of Florida, 51 SW 1st Ave., Ste. 1204, Miami, Florida 33130, and it is further

ORDERED that the failure of any person or entity to file an objection, on or before the Objection Deadline, to the Asset Sale, shall be a bar to the assertion of any such objection by such person or entity; and it is further

ORDERED that the Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to implement and effect the terms and requirements of this Bidding Procedures Order; and it is further

ORDERED that the Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order; and it is further

ORDERED that the Debtors shall reserve the amount of $25,000 ("Reserved Amount") to pay reasonable, actual and necessary fees incurred by legal counsel for the Committee of Unsecured Creditors up to the Reserved Amount upon Court approval of the fee application for such counsel ("Committee Carve Out"); and it is further

ORDERED that Wachovia shall lower its reserves under the DIP Facility, as defined in this Court's Interim Order Authorizing Debtor to Obtain Secured Postpetition Financing [C.P. #67], by the sum of $25,000 to provide for the reserve of the Committee Carve-Out; and it is further

ORDERED that the Debtors shall remain responsible for paying all quarterly fees due and owing to the United States Trustee's Office ("UST") through the closing of the case, and the obligation to pay these outstanding UST fees shall also constitute an assumed liability of the Winning Bidder. The Debtors shall retain as an excluded asset from the sale of their assets such amount as is necessary to cover any outstanding UST quarterly fees through the closing of the case; and it is further

ORDERED that, to the extent that this Order, including the attached Bidding Procedures, is inconsistent with any provision of the Agreement, this Order shall control.

###

Submitted by:
Stephen P. Drobny, Esq.
SHUTTS & BOWEN LLP
*Proposed Attorneys for Debtors-in-Possession*
1500 Miami Center
201 S. Biscayne Boulevard
Miami, FL  33131
Telephone:  (305) 358-6300
Facsimile:  (305) 415-9873

Attorney Drobny shall serve a conformed copy of this Order upon receipt of same on all parties in interest and shall file a Certificate of Service with the Court.

EXHIBIT A

BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") shall govern the sale and auction of certain of the assets and/or business operations of Catalina Lighting, Inc. and Catalina Industries, Inc. (collectively, "Debtors") and their affiliates to Evolution Lighting, LLC, or its nominee (the "Stalking Horse Bidder"), and its affiliate, Evolution Lighting Canada, Inc. ("Canadian Stalking Horse Bidder"), or any competing bidder. These Bidding Procedures have been approved and authorized by order dated March **_11_**, 2010 (the "Procedures Order") of the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in the jointly administered chapter 11 cases of the Debtors (Lead Case No. 10-14786-RAM). Capitalized terms, used herein but not separately defined, shall have the meanings ascribed to such terms in that certain Purchase Agreement by and between the Stalking Horse Bidder and Sellers dated February 25, 2009 (the "Agreement").

1.      Property to be Sold. Pursuant to an Asset Purchase Agreement with the Stalking Horse Bidder, the Debtors have agreed to sell to the Stalking Horse Bidder, or any higher and better bidder, substantially all of the Debtors' assets, consisting of all of the Debtors' right, title and interest in, to and under all of the properties, assets and other rights (other than the Excluded Assets) which constitute the Purchased Assets as defined in the Agreement ("U.S. Assets"). In addition, pursuant to a separate Asset Purchase Agreement ("Canadian Agreement") by and among the Debtors' affiliate, Catalina Lighting Canada (1992) Inc. ("Catalina Canada", and together with the Debtors, the "Sellers"), and the Canadian Stalking Horse Bidder, the Sellers have also agreed to sell to the Canadian Stalking Horse Bidder, or any higher and better bidder, substantially of the assets of the Catalina Canada, consisting of all of the Sellers' right, title and interest in, to and under all of the properties, assets and other rights (other than the Excluded Assets) which constitute the Purchased Assets as defined in the Canadian Agreement ("Canadian Assets").[4] **Catalina Canada will be placed into a Canadian receivership prior to the Auction, and the Canadian court will be requested to approve the sale of the Canadian Assets at the Auction. The Auction will be a combined Auction of both the U.S. Assets and the Canadian Assets. Neither the U.S. Assets nor the Canadian Assets may be purchased separately. At the Auction , the Debtors will sell, for a single purchase price payable to Shutts & Bowen LLP, as Escrow Agent for the Debtors and Catalina Canada, both the U.S. Assets and the Canadian Assets (collectively, the "Assets") to the Qualified Bidder submitting the highest and best bid, as determined by the Bankruptcy Court. A Qualified Bidder may elect to have a Canadian affiliate be the actual purchaser of the Canadian Assets. The sale of the Assets at the Auction shall be conditioned upon the approval of the sale of the Canadian Assets by the Canadian Court.**

---

[4] A complete copy of the Canadian Agreement (including all Exhibits and Schedules thereto) is on file with the Bankruptcy Court as docket entry # 72.

A - 1

As provided in the Procedures Order, the sale of the Assets (the "Asset Sale") is subject to a determination of which entity is the Winning Bidder (as defined in Section 9 below). The Stalking Horse Bidder shall be treated as a Qualified Bidder (as defined in Section 3 below), and the Agreement shall be treated as a Qualified Bid (as defined in Section 5 below), for all purposes under the Bidding Procedures.

      2.      Due Diligence. Upon receipt by Shutts & Bowen LLP ("Debtors' Counsel") of (i) an executed confidentiality agreement ("Confidentiality Agreement") containing terms substantially similar to the terms set forth in Section 5.8 of the Agreement; (ii) a completed and executed bidder information sheet (form to be provided upon request), and (iii) evidence satisfactory to the Debtors that the potential bidder is reasonably likely to be able to consummate a purchase of the Assets, all in form and substance satisfactory to the Debtors in their discretion, a potential bidder shall be provided with additional information regarding the Assets and the Debtors' operations and financial condition, and shall be afforded the opportunity to inspect the Assets ("Due Diligence"). In addition, all reasonable efforts shall be made to provide a potential bidder, who has satisfied the conditions of this Section 2, with such information as such potential bidder may reasonably determine is necessary or relevant to the formulation of its bid. Any disputes over whether a potential bidder should be permitted to engage in Due Diligence shall, upon motion, be resolved by the Bankruptcy Court.

**DEBTORS' COUNSEL HAS NOT PREPARED ANY OF THE INFORMATION REGARDING THE DEBTORS, OR ANY OF ITS OPERATIONS, ASSETS OR FINANCIAL CONDITION TO BE PROVIDED TO A POTENTIAL BIDDER IN CONNECTION WITH THE PROCEDURES SET FORTH HEREIN. CONSEQUENTLY, NO REPRESENTATION IS MADE BY THE DEBTORS' COUNSEL REGARDING THE ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THE BIDDING PROCEDURES, AND ALL POTENTIAL BIDDERS ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.**

      3.      Qualified Bidders.

      (a) A potential bidder that satisfies the following requirements, and that the Debtors determine is reasonably likely to be able to consummate a purchase of the Assets shall be considered a "Qualified Bidder." Within three (3) Business Days of each potential bidder's delivery of all of the material required in subsections (b)(i) through (b)(v) below, the Debtors shall notify such potential bidder in writing as to whether such potential bidder shall be considered a Qualified Bidder. *Any disputes over whether a potential bidder should be considered a Qualified Bidder shall, upon motion,*

*PM*

      (b) Unless otherwise ordered by the Bankruptcy Court for cause shown, no bid for the Assets will be considered unless prior to or in conjunction with making such bid, the bidder delivers the following items to Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Stephen P. Drobny, Esq.

*be resolved by the Bankruptcy Court.*

*RM*

A-2

(i)    An executed Confidentiality Agreement as provided in Section 2 of these Bidding Procedures;

(ii)    A completed and executed bidder information sheet (to be provided upon request) in form and substance satisfactory to the Debtors in their discretion;

(iii)    The most recent financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, current financial statements of the equity holder(s) of the potential bidder, and such other financial disclosure acceptable to, and requested by, the Debtors, which information shall demonstrate the financial capability of the potential bidder to consummate the purchase of the Assets (including evidence that the bidder has adequate financing for the transaction), and to provide "adequate assurance of future performance," within the meaning of section 365(f)(2)(B) of title 11 of the Bankruptcy Code of any executory contracts and unexpired leases to be assumed and assigned to such bidder should the potential bidder be the Winning Bidder. If the prospective bidders (or the equity holders of an acquisition entity formed to be a prospective bidder), have financial statements that are audited by outside accountants, the financial statements required hereby shall be audited financial statements. In any event, an authorized representative of the bidder shall certify that the financial statements required hereby are true and correct;

(iv)    Evidence that the potential bidder has the necessary internal authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained; and

(v)    A cashier's check made payable to Shutts & Bowen LLP, as Escrow Agent, or cash paid to Shutts & Bowen, LLP, as Escrow Agent, in an amount not less than $200,000 ("Deposit"). The bidder shall forfeit the Deposit if (i) the bidder is determined to be a Qualified Bidder and withdraws or modifies its bid or any subsequent Increased Bid (as defined below) before the Bankruptcy Court approves the Debtors' selection of the Winning Bidder, and/or (ii) the bidder is determined to be the Winning Bidder and (A) modifies or withdraws the bid or any subsequent Increased Bid without the Debtors' consent before the consummation of the sale contemplated by the Competing Agreement (as defined below) or (B) breaches the Competing Agreement. The Deposit shall be returned to the bidder (i) if the bidder is determined not to be a Qualified Bidder or (ii) if the bidder complies with all of the requirements of the Bidding Procedures and is determined not to be the Winning Bidder.

4.    Time for Submission of Bids. Any Qualified Bidder that desires to participate in the Auction (as defined in Section 8 below) shall deliver a copy of its bid not later than 4:00 p.m. Eastern Standard Time on Tuesday, April 6, 2010 ("Initial Bid Deadline") to (i) Debtors' Counsel, Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Stephen P. Drobny, Esq., Fax: (305)

A-3

415-9847, email: sdrobny@shutts.com; and (ii) Counsel for Evolution Lighting, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E. MacWright Esq., Fax: (305) 358-5744, email: tmacwright@whitecase.com.

       5.       <u>Form and Content of Bids</u>. To constitute a "Qualified Bid," a bid, other than the bid of Stalking Horse Bidder, must satisfy the following requirements:

       (a) The bid must include executed definitive asset purchase agreements for the purchase of both the U.S. Assets and the Canadian Assets and assumption of all Assumed Liabilities, which shall be made upon terms and conditions substantially similar to and no less economically favorable to the Debtors then those contained in the Agreement and the Canadian Agreement (collectively, the "<u>Agreements</u>"), and must be accompanied by forms of the Agreements that specifically set forth those amendments and modifications to the Agreements, including price, terms, agreements to be assumed, and liabilities not to be assumed, which such bidder would propose if it were selected as the Winning Bidder ("<u>Competing Agreements</u>"). All modifications or amendments to the Agreements that are contained in the Competing Agreements must be "red lined" or marked in order to be enforceable against the Debtors.

       (b) The Competing Agreements must provide for total net consideration consisting of cash, exclusive of the Assumed Liabilities, to the Debtors' estates of not less than an amount equal to the sum of (i) $100,000, (ii) the Senior Debt Amount, and (iii) the Break-Up Fee ($300,000).[5]

       (c) The Competing Agreements must not be conditioned on the ability of the bidder to obtain financing, the outcome of unperformed Due Diligence by the bidder, or any other contingencies (including any working capital adjustments); <u>provided, however</u>, that a bid may be subject to the confirmation of the accuracy and completeness of the specified representations and warranties in all material respects at the closing of the Asset Sale or the satisfaction of specified conditions in all material respects at the closing of the Asset Sale. None of such conditions shall be materially more burdensome or unfavorable to the Debtors than those set forth in the Agreements. Notwithstanding anything herein, the Competing Agreements must provide for the closing of the Asset Sale on a date no later than <u>April 12, 2010</u>, subject to satisfaction of all conditions to closing.

       (d) The Competing Agreements do not entitle the bidder to any break-up fee, termination fee or similar type of payment or reimbursement.

       (e) A bid will not be considered by Debtors as qualified for the Auction if (1) such bid is not received by Debtors in writing on or prior to the Initial Bid Deadline, or (2) such bid or other information submitted by the bidder does not contain satisfactory

---

[5] The Senior Debt Amount totals $3,302,043 as of February 24, 2010. However, the Senior Debt Amount is based on a revolving line of credit and fluctuates on a daily basis. Prior to the Auction, Qualified Bidders may obtain the then current Senior Debt Amount by contacting Debtors' Counsel, Stephen P. Drobny, Esq.

A-4

evidence that the person submitting it has sufficient financial wherewithal to consummate the purchase contemplated thereby.

(f) The Competing Agreements must identify (i) those executory contracts and unexpired leases of the Debtors which the bidder wishes to have assumed by the Debtors and assigned to it, and (ii) those liabilities which the bidder intends to assume.

(g) The Competing Agreement must be accompanied by a letter affirmatively (i) setting forth the identity of the bidder, the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtors involved in such bid, (ii) stating that the bidder offers to purchase the Assets upon the terms and conditions set forth in the Competing Agreements, (iii) summarizing the proposed consideration the bidder proposes to pay under the Competing Agreements, (iv) stating the aggregate value of the consideration the bidder proposes to pay under the Competing Agreements (which statement of value shall not be binding on the Debtors or the Bankruptcy Court), and (v) stating the form of the Deposit (*i.e.*, cashier's check, cash or letter of credit) made by the bidder.

(h) The foregoing materials must be received by Debtors' Counsel on or before the Initial Bid Deadline.

6.      Distribution of Qualified Bids Prior to Auction. After the Debtors determine which bids are Qualified Bids, all Qualified Bids, along with the Debtors' determination as to the value of such bids and the discount, if any, that they are applying to such bids as a result of changes to the Agreements or otherwise, will be made available to each Qualified Bidder to allow each Qualified Bidder adequate notice and opportunity to (a) discuss any questions or comments about any Qualified Bids with the Debtors, and (b) prepare an Increased Bid prior to the Auction. If no Qualified Bids other than the Agreements are received by the Initial Bid Deadline, no Auction will be conducted, and the Stalking Horse Bidder will be deemed to be the Winning Bidder. If the Stalking Horse Bidder is the Winning Bidder, the Debtors shall request at the Sale Hearing that the Bankruptcy Court approve the sale of the Assets to the Stalking Horse Bidder.

7.      Notification of Current Senior Debt Amount, Accounts Receivable, Accounts Payable and Inventory.  By noon on April 7, 2010, the Debtors shall provide notice to all Qualified Bidders as to the current Senior Debt Amount, the amount of accounts payable due and owing by the Sellers, the amount of accounts receivable due and owing to the Sellers and the current book value of the Sellers' inventory.

8.      Notification of Opening Bid.  At the commencement of the Auction, the opening bid will be the Agreements.

9.      The Auction.                              the Court            *RM*

(a) If one or more Qualified Bids other than the Agreements are submitted in accordance with the Bidding Procedures, ~~Debtor's Counsel~~ will conduct an auction ("Auction") to be held on Thursday, April 8, 2010 commencing at 2:00 p.m.,

A-5

Eastern Standard Time.    At the Auction, the Debtors shall recommend and the Bankruptcy Court shall determine the highest and best bid from the Stalking Horse Bidder or any other Qualified Bidder. The Auction shall take place at the United States Bankruptcy Court, Courtroom 1406, 51 S.W. First Avenue, Miami, FL 33130. Only Qualified Bidders may participate in the Auction and they must attend the Auction in person or through an authorized representative or agent with actual authority to participate in the Auction and bind such Qualified Bidder.    During the Auction, any Qualified Bidder may increase its Qualified Bid by another Qualified Bid that:

    (i)    provides for cash consideration that exceeds by not less than $50,000 the cash consideration to be paid pursuant to the then highest Qualified Bid or Increased Bid (as defined below), if any;

    (ii)    identifies specifically any other changes made to such Qualified Bidder's prior Qualified Bid; and

    (iii)    satisfies the requirements of Sections 3(b) and 5 above.

Any bid received from a Qualified Bidder during the Auction that satisfies the requirements set forth in subsections (a)(i) through (a)(iii) above shall constitute an "Increased Bid."

    (b)    Notwithstanding the foregoing, in the event of an Increased Bid, the Stalking Horse Bidder shall be entitled to submit successive overbids.

    (c)    The Stalking Horse Bidder is seeking approval from the Bankruptcy Court to credit bid at the Auction pursuant to 11 U.S.C. § 363(k) (the "Credit Bid Motion"). A hearing on the Credit Bid Motion will be conducted on Thursday, March 25, 2010 at 3:00 PM at the United States Bankruptcy Court, Courtroom 1406, 51 S.W. First Avenue, Miami, FL 33130.    Subject to the Bankruptcy Court's approval of the Credit Bid Motion, the Stalking Horse Bidder shall be entitled, in the calculation of the amount of the Stalking Horse Bidder's overbids, to credit bid the Break Up Fee and any portion of the amount owed to the Stalking Horse Bidder as assignee of those certain Second Lien Notes. *The Stalking Horse Bidder has been ordered to file* *AM* *the Credit Bid Motion by March 15, 2010.*

    (d)    Subject to the Bankruptcy Court's approval, the Debtors may seek to adopt such additional and reasonable rules for bidding at the Auction as will better promote the goals of the bidding process, allow all Qualified Bidders reasonable notice and opportunity to submit Increased Bids, and are not otherwise inconsistent with any order of the Bankruptcy Court or these Bidding Procedures.

    10.    Selection of Winning Bidder. At the Auction, the Debtors shall review and consider each of the Qualified Bids and the Increased Bids, if any. The Debtors shall, subject to the Bankruptcy Court's approval, make a recommendation as to the highest and best offer.    In determining the highest and best offer, the Bankruptcy Court may consider factors other than the bid amount, including, without limitation, any additional risks associated with Competing Agreements such as delays in closing, contingencies, additional representations, etc.    The highest and best offer shall be

determined by the Bankruptcy Court and announced at the conclusion of the Auction. The bidder making the bid that is determined to be the highest and best bidder shall be considered the "Winning Bidder."

11.    Bankruptcy Court Approval of the Winning Bidder.  Immediately upon conclusion of the Auction, the Bankruptcy Court shall conduct an evidentiary hearing to confirm the results of the Auction, resolve any objections to the manner in which the Auction was conducted, approve the Winning Bidder and direct the Winning Bidder to close on the sale   ("Sale Hearing").  At the Sale Hearing, the Bankruptcy Court will resolve any disputes over the assumption and assignment of contracts, including, without limitation, any disputes over the applicable cure costs and sufficiency of assurance of performance.

12.    Closing.  The Winning Bidder shall close on the sale on or before April 12, 2010.

13.    Failure to Consummate Purchase. The Debtors and the Winning Bidder shall be authorized to effect the sale of the Assets, or any part thereof, to the Winning Bidder following the entry of the Sale Order without further order of the Bankruptcy Court but conditioned upon approval of the sale of the Canadian Assets by the Canadian Court.  If any such failure to consummate the purchase is the result of a breach of the Agreements or the Competing Agreements by the Winning Bidder, the Deposit of such Winning Bidder shall be forfeited to the Debtors as liquidated damages in accordance with the Agreements or Competing Agreements.

14.    Return of Deposits.  Within two (2) Business Days after the entry by the Bankruptcy Court of its order ("Sale Order") approving the Sale of the Assets to the Winning Bidder, the Deposit submitted by all Qualified Bidders shall be returned, except for those submitted by (i) the Stalking Horse Bidder (if the Stalking Horse Bidder is not the Winning Bidder), in which case the Deposit shall be returned within two (2) Business Days after the Bankruptcy Court's selection of the Winning Bidder (other than the Stalking Horse Bidder) at the conclusion of the Auction, (ii) the Winning Bidder, in which case the Deposit will be applied to the cash portion of the purchase price set forth in the Agreements or the Competing Agreements, as the case may be; provided, however, that if the Stalking Horse Bidder is not the Winning Bidder, the Deposit of the Winning Bidder will be applied first towards payment to the Stalking Horse Bidder of the Break Up Fee in accordance with the Agreements; and (iii) any bidders that forfeit their Deposit under Section 3(b)(v) above.  Except as otherwise provided for herein, in the event the Debtors cancel the proposed sale of the Assets or withdraw the Sale Motion, the Deposit submitted by all Qualified Bidders shall be immediately returned.

15.    Business Judgment of the Debtors.  The Debtors reserve the right (a) to send copies of these Bidding Procedures together with any other information to any potential interested party; (b) to recommend to the Bankruptcy Court whether the amendments and changes contained in each Competing Agreement are acceptable as terms and conditions to sell; (c) to determine which Qualified Bid, if any, is the highest and/or otherwise best offer; and/or (d) to reject at any time prior to entry of an order of

A-7

the Bankruptcy Court approving the sale to the Winning Bidder, any bid which the Debtors deem to be (i) inadequate or insufficient, or (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures; provided, however, that any disputes arising out of the rejection of a bid shall, upon motion, be resolved by the Bankruptcy Court.

*Exhibit B*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Catalina Lighting, Inc., *et al.,*[1]

      Debtors.

_____/

Chapter 11

Case No. 10-14786-RAM

(Jointly Administered)

### NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND SCHEDULING FINAL SALE HEARING RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

     1.     On February 25, 2010 ("Petition Date"), the above-captioned debtors and debtors in possession (collectively, "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"). On February 26, 2010, the Debtors filed a motion ("Sale Motion") [D.E. # 21] with the Bankruptcy Court seeking, among other things, an order of the Bankruptcy Court (a) approving that certain Asset Purchase Agreement ("Agreement"), dated February 25, 2010, by and among the Debtors, as sellers, and Evolution Lighting, LLC, as buyer ("Stalking Horse Bidder"), for the purchase and sale of the Purchased Assets (as defined in the Agreement); (b) establishing bidding procedures for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests ("Bidding Procedures"); (c) authorizing the Debtors to provide certain stalking horse bid protections to the Stalking Horse Bidder; (d) scheduling a hearing to consider approval of the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests pursuant to the Agreement to the Stalking Horse Bidder or the highest and best bidder, if applicable, at an Auction ("Sale Hearing"), (e) authorizing the Debtors' assumption and assignment of certain executory contracts and unexpired leases in connection therewith at the Sale Hearing, and (f) approving the form and manner of notice thereof.

     2.     Pursuant to the Agreement with the Stalking Horse Bidder, the Debtors have agreed to sell to the Stalking Horse Bidder, or any higher and better bidder, substantially all of

---

[1]  The Debtors are the following two (2) entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Catalina Lighting, Inc., a Florida corporation (8266); and Catalina Industries, Inc., a Florida corporation (4785). The address of each of the Debtors is 18191 NW 68th Avenue, Hialeah, FL 33015.

B-1

the Debtors' assets, consisting of all of the Debtors' right, title and interest in, to and under all of the properties, assets and other rights (other than the Excluded Assets) which constitute the Purchased Assets as defined in the Agreement ("U.S. Assets"). In addition, pursuant to a separate Asset Purchase Agreement ("Canadian Agreement") by and among the Debtors' affiliate, Catalina Lighting Canada (1992) Inc. ("Catalina Canada", and together with the Debtors, the "Sellers"), and the Canadian Stalking Horse Bidder, the Sellers have also agreed to sell to the Canadian Stalking Horse Bidder, or any higher and better bidder, substantially of the assets of the Catalina Canada, consisting of all of the Sellers' right, title and interest in, to and under all of the properties, assets and other rights (other than the Excluded Assets) which constitute the Purchased Assets as defined in the Canadian Agreement ("Canadian Assets").[2] **Catalina Canada will be placed into a Canadian receivership prior to the Auction, and the Canadian court will be requested to approve the sale of the Canadian Assets at the Auction. The Auction will be a combined Auction of both the U.S. Assets and the Canadian Assets. Neither the U.S. Assets nor the Canadian Assets may be purchased separately. At the Auction, the Debtors will sell, for a single purchase price payable to Shutts & Bowen LLP, as Escrow Agent for the Debtors and Catalina Canada, both the U.S. Assets and the Canadian Assets (collectively, the "Assets") to the Qualified Bidder submitting the highest and best bid, as determined by the Bankruptcy Court. A Qualified Bidder may elect to have a Canadian affiliate be the actual purchaser of the Canadian Assets. The sale of the Assets at the Auction shall be conditioned upon the approval of the sale of the Canadian Assets by the Canadian Court.**

3.  A hearing on the portion of the Sale Motion dealing with the Bidding Procedures and the related bid protections for the Stalking Horse Bidder was held before the Bankruptcy Court on March 10, 2010, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures set forth in the Sale Motion ("Bid Procedures Order") (D.E. # __).

4.  A copy of the Bid Procedures Order is attached hereto as Annex 1. The Bid Procedures Order establishes the Bidding Procedures that govern the manner in which the Assets are to be sold. All bids must comply with the Bidding Procedures and be submitted so as to be received not later than **4:00 p.m. Prevailing Eastern Time on Tuesday, April 6, 2010** ("Initial Bid Deadline").

5.  **THE COMPLETE BIDDING PROCEDURES ARE ATTACHED AS EXHIBIT A HERETO.**

6.  The Sale Hearing is currently scheduled to be conducted on **Thursday, April 8, 2010 at 2:00 PM** (Eastern Time) at the United States Bankruptcy Court, Courtroom 1406, 51 S.W. First Avenue, Miami, Florida 33131 before the Honorable Robert A. Mark, United States Bankruptcy Judge, to consider the approval of the Agreements or any higher or better offer by a Successful Bidder (as defined in the Sale Motion). If the Stalking Horse Bidder is the Winning Bidder, the Debtors anticipate seeking entry of a Sale Order on the terms described in the Sale

---

[2] A complete copy of the Canadian Agreement (including all Exhibits and Schedules thereto) is on file with the Bankruptcy Court as docket entry # 72.

Motion and the Agreement ("Sale Order").  The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

7.    **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER TOGETHER WITH THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT, AND SERVED SO AS TO BE ACTUALLY RECEIVED NO LATER THAN 5:00 P.M. EASTERN TIME ON ~~XXXXXXXXXXXX~~ APRIL 5, 2010 PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE STALKING HORSE BIDDER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

*RM*

8.    **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 7 ABOVE ON EACH OF THE FOLLOWING PARTIES:**

      i.    Debtors' Counsel, Shutts & Bowen LLP, 1500 Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, Attn.: Peter Levitt, Esq., Fax: (305) 415-9847, email: plevitt@shutts.com;

      ii.    Stalking Horse Bidder's counsel, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E. MacWright, Esq., Fax: (305) 358-5744, email: tmacwright@whitecase.com

      iii.    Wachovia's counsel, K&L Gates, 200 South Biscayne Blvd., Suite 3900, Miami, FL 33131, Attn: Jeffrey Kucera, Fax: (305) 358-7095, email: jeffrey.kucera@klgates.com

9.    The Sale Order, if approved, shall authorize the assumption and assignment of various executory contracts and unexpired leases that are the property of the Debtors (collectively, "Designated Agreements").  In accordance with the Sale Procedures Order, additional individual notices setting forth the specific Designated Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and the proposed cure amounts for such contracts will be given to all counterparties to Designated Agreements.

10.    The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the sale transaction contemplating the sale of the Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures, the Sale Motion, the Auction, the sale of the Assets, the Debtors' consummation and performance of the Agreement or other agreement(s) with a different Successful Bidder (including in any such case, without limitation, the transfer of the Assets free and clear of all liens, claims, encumbrances and interests).

11.    This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:_____

SHUTTS & BOWEN LLP
*Proposed Attorneys for Debtors-in-Possession*
1500 Miami Center
201 S. Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile : (305) 415-9873


By: */s/ Peter H. Levitt*
Peter H. Levitt
Florida Bar No. 650978
Stephen P. Drobny
Florida Bar No. 55732