ORDERED in the Southern District of Florida on April 8, 2010



Robert A. Mark, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Catalina Lighting, Inc., *et al.*,[1]

Debtors.

_____/

Chapter 11

Case No. 10-14786-RAM

(Jointly Administered)

### ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004, 6006 AND 9014 AUTHORIZING (A) SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion ("Motion") [C.P. # 21][2] of the above-captioned debtors and debtors in possession (collectively, "Debtors") seeking, pursuant to sections 105, 363, and 365 of Title 11

---

[1] The Debtors are the following two (2) entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Catalina Lighting, Inc., a Florida corporation (8266); and Catalina Industries, Inc., a Florida corporation (4785). The address of each of the Debtors is 18191 NW 68th Avenue, Hialeah, FL 33015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of the United States Code ("Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), entry of an order (a) approving that certain Asset Purchase Agreement, dated February 25, 2010, as amended, ("Purchase Agreement"), by and among the Debtors, as sellers, and Evolution Lighting, LLC, an affiliate of Boyne Capital Partners, Inc., as buyer (" "Purchaser"), for the purchase and sale of the Purchased Assets, (b) establishing bidding procedures for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests pursuant to Section 363(f) of the Bankruptcy Code, (c) authorizing the Debtors to provide certain "stalking horse" bid protections to Purchaser, (d) scheduling a hearing ("Sale Hearing") to consider approval of, and approving, the sale of the Purchased Assets pursuant to Sections 363 and 365 of the Bankruptcy Code free and clear of all liens, claims, encumbrances and interests pursuant to the Purchase Agreement to Purchaser or the highest and best bidder, if applicable, at an Auction, (e) authorizing the Debtors' assumption and assignment of certain executory contracts and unexpired leases in connection therewith at the Sale Hearing, (f) approving the form and manner of notice thereof, and (g) granting related relief; and the Court having reviewed the Motion, and all other papers filed with the Court relating thereto; no timely objections to the Sale having been filed; and having heard the statements of counsel with respect to the Motion at the Sale Hearing held on April 8, 2010; and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the relief sought in the Motion and of the Hearing was sufficient under the circumstances, (d) a sound business purpose exists to grant the relief granted in the Motion, and (e) there is good cause to waive the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d); and good cause having been shown, it is

    FOUND AND DETERMINED THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such and vice versa.

B. As evidenced by the affidavits and certificates of service previously filed by the Debtors with the Court, and based on the representations of counsel at the Sale Hearing, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing and the sale transaction has been provided in accordance with Bankruptcy Rules 2002(a), 6004(a) and 6006(c) and in compliance with the Order (A) Authorizing and Approving Bidding Procedures to be Employed in Connection with Asset Sale; (B) Approving Break Up Fee; (C) Scheduling an Auction and Hearing to Consider Approval of the Asset Sale; and (D) Approving Form and Manner of Notice of Bidding Procedures, Auction and Sale Hearing ("Bidding Procedures Order") [C.P. # 79].

C. As demonstrated by the testimony and/or other evidence proffered or adduced at the March 10, 2010 and March 11, 2010 hearings that culminated in the entry of the Bidding Procedures Order, at the March 29, 2010 hearing on Purchaser's Motion to Approve Credit Bid [C.P. # 85] and the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, (i) the Debtors have appropriately marketed the Purchased Assets and conducted a sale process in full compliance with the Bidding Procedures Order (including with respect to the solicitation and evaluation of bids and the acceptance of the offer for the assets set forth in the Purchase Agreement); (ii) the Bidding Procedures and the Auction were duly noticed and conducted in a non-collusive, fair and good faith manner; (iii) a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets and the

Designated Agreements[3]; and (iv) the Debtors determined that the bid submitted by Purchaser represented the highest and best bid.

D. Upon entry of this Order, the Debtors (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby; (ii) have all of the corporate power and authority necessary to consummate the sale transaction contemplated by the Purchase Agreement; and (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtors, as sellers, of the sale contemplated thereby.

E. Approval of the Purchase Agreement and consummation of the sale transaction contemplated thereby at this time is in the best interests of the Debtors, their bankruptcy estates, their creditors and other parties in interest, as the Debtors have determined in their reasoned business judgment as part of their overall restructuring efforts and provides the best opportunity under the circumstances to maximize the value of the Purchased Assets for all constituencies.

F. The Debtors have advanced sound and sufficient business reasons, and it is a reasonable exercise of the Debtors' business judgment, to sell all right, title and interest in and to the Purchased Assets on the terms set forth in the Purchase Agreement and to consummate the sale transaction. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for completing the sale transaction prior to confirmation of a plan of reorganization consistent with applicable law.

G. The Purchase Agreement and the sale transaction were negotiated, proposed and entered into by the Debtors and Purchaser without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors nor Purchaser have engaged in any conduct that would

---

[3] As used herein, the term Designated Agreements shall mean those executory contracts and unexpired leases identified in the Notice of Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases and Cure Costs Related Thereto [C.P. # 139].

cause or permit the Purchase Agreement or the sale transaction to be avoided under the Bankruptcy Code, including, but not limited to section 363(n) of the Bankruptcy Code, and the Purchase Agreement and the sale transaction therefore are not avoidable.

H.   Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

I.   Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

J.   The consideration provided by Purchaser pursuant to the Purchase Agreement is fair and reasonable under the circumstances of the Debtors and is the highest and best offer for the Purchased Assets under the circumstances of these cases for the reasons stated on the record at the Sale Hearing.

K.   Except as otherwise provided in the Purchase Agreement or this Order, the sale of the Purchased Assets to Purchaser will be a legal, valid and effective transfer of the Purchased Assets free and clear of all claims, liens, encumbrances and other interests (collectively, "Interests"), including, but not limited to (i) all deeds of trust and security interests in favor of or for the benefit of any secured lender, including, without limitation, any replacement liens previously granted to any such party by any order of this Court; (ii) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of Debtors' or Purchaser's interest in the Purchased Assets, or any similar rights; (iii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtors' business or any of the Purchased Assets prior to the consummation of the sale transaction ("Closing"); and (iv) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including,

5

but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtors or any of their predecessors or affiliates, claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of any of the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

L. Except as expressly set forth in this Order or the Purchase Agreement, Purchaser shall have no liability for any liability, Interest or other obligation of or against the Debtors related to the Purchased Assets by reason of the sale transaction, including but not limited to the transfer of the Purchased Assets to Purchaser. Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (i) be a successor to the Debtors (other than with respect to any liabilities specifically assumed under the Purchase Agreement or as otherwise expressly provided for in this Order and for any obligations arising under the Designated Agreements from and after the Closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors. Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as otherwise expressly set forth in this Order, the Purchase Agreement or in any of the Designated Agreements.

M. Purchaser would not have entered into the Purchase Agreement and would not consummate the sale contemplated thereby, thus adversely affecting the Debtors, their bankruptcy estates and creditors and other stakeholders, if the sale transaction involving the sale

6

of the Purchased Assets to Purchaser and the assumption, assignment and sale of the Designated Agreements to Purchaser were not, except as otherwise provided for in this Order or in the Purchase Agreement, free and clear of all Interests of any kind or nature whatsoever, or if Purchaser would, or in the future could, be liable for any of such Interests.

N.  The Debtors may sell the Purchased Assets free and clear of all Interests of any kind or nature whatsoever as contemplated by the Purchase Agreement because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied, including for the reasons stated on the record at the Sale Hearing.  Those holders of Interests and non-debtor parties to Designated Agreements that did not object, or who withdrew their objections to the Motion or the sale transaction, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests and non-debtor parties to Designated Agreements that did object fall within one or more of the other subsections of section 363(f)(1) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the net cash proceeds of the sale transaction ultimately attributable to the property against or in which they claim an Interest.

O.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume, assign and sell the Designated Agreements to Purchaser in connection with the consummation of the sale transaction, and the assumption, assignment and sale of the Designated Agreements is in the best interests of the Debtors, their bankruptcy estates and their creditors and other stakeholders.  The Designated Agreements being assigned to, and the related liabilities being assumed by, Purchaser are an integral part of the Purchased Assets and the Debtors' business being purchased by Purchaser, and, accordingly, such assumption, assignment and sale of Designated Agreements and related liabilities are reasonable and enhance the value of the Debtors' bankruptcy estates.

P.  In accordance with and in satisfaction of section 365(b)(1)(C), Purchaser has provided adequate assurance of its future performance under each of the Designated Agreements and, in accordance with and in satisfaction of sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Debtors and/or Purchaser's payment of the Prepetition Cure Amounts.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

### General Provisions

1.  The relief requested in the Motion is **GRANTED** pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 2004, 6004, 6006 and 9014.

2.  All objections to the Motion or the relief requested therein, including any objections filed or otherwise raised at the Sale Hearing that have not been withdrawn, waived or settled, and all reservations of rights included in such objections are overruled.

### Approval of the Purchase Agreement

3.  The Purchase Agreement, including, all exhibits and schedules thereto and any ancillary agreements and all of the terms and conditions thereof, is approved. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the Purchase Agreement, and consummate the sale transaction in accordance with the terms of the Purchase Agreement.

4.  The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement the Purchase Agreement and the sale transaction, together with all additional instruments and documents that the Debtors or Purchaser deem necessary or appropriate to implement the Purchase Agreement and effectuate the sale transaction, and to take all other and further actions as may be necessary for the purpose of assigning, transferring, granting, conveying the Purchased Assets to Purchaser.

8

## Transfer of Purchased Assets

5. Except for the Assumed Liabilities or as otherwise expressly provided for in this Order or in the Purchase Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred, sold and conveyed to Purchaser free and clear of all Interests of any kind or nature whatsoever, and all such Interests of any kind or nature whatsoever shall attach to the proceeds of sale in the order of their priority, with the same validity, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

6. Except as expressly permitted or otherwise specifically provided for by this Order or the Purchase Agreement, all persons and entities, including, but not limited to, equity security holders; governmental, tax and regulatory authorities; landlords; lenders; trade creditors; and other creditors holding Interests of any kind or nature whatsoever against the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtors, their business and/or the Purchased Assets prior to the Closing are forever barred, estopped and enjoined from asserting such Interests against Purchaser, its successors or assigns.

7. The transfer of the Purchased Assets to Purchaser pursuant to the Purchase Agreement constitutes a legal, valid and effective sale and transfer of the Purchased Assets, and shall vest Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Interests of any kind or nature whatsoever other than as expressly permitted by this Order or the Purchase Agreement. The purchase price for the Purchased Assets is fair and reasonable and may not be avoided and shall be deemed to constitute fair consideration under the Bankruptcy Code and other applicable laws.

8.  Upon the Closing of the sale, each of the Debtors' creditors and any other holder of an Interest is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

9.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Interests in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests that the person or entity has with respect to the Debtors, their business or the Purchased Assets or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to their business or the Purchased Assets and (b) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature whatsoever.

## Assumption and Assignment of Designated Agreements

10.  Pursuant to section 365 of the Bankruptcy Code and subject to and conditioned in all cases upon the Closing of the sale, the Debtors' assumption, assignment and sale to Purchaser of the Designated Agreements, and Purchaser's assumption of such Designated Agreements on the terms set forth in the Purchase Agreement are hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed fully satisfied.

11.  The Debtors hereby are authorized to execute and deliver to Purchaser such documents or other instruments as Purchaser deems necessary or appropriate to assign and transfer the Designated Agreements to Purchaser.

12. With respect to the Designated Agreements: (a) the Designated Agreements shall, following the Closing of the sale, remain in full force and effect for the benefit of Purchaser, notwithstanding any provision in any such Designated Agreement (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Designated Agreements after such assumption by the Debtors and assignment and sale to Purchaser; (b) any provisions in any Designated Agreement that prohibit or condition the assignment of such Designated Agreement or allow the party to such Designated Agreement to terminate; recapture, impose any penalty, condition renewal or extension or modify any term or condition upon the assignment of such Designated Agreement, constitute unenforceable anti-assignment provisions, which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and sale and assignment to Purchaser of each Designated Agreement have been satisfied; and (d) upon Closing, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Designated Agreement.

13. All defaults or other obligations of the Debtors under the Designated Agreements arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors and/or Purchaser in accordance with terms of the Purchase Agreement by payment of the Cure Amounts, and Purchaser shall have no liability or obligation arising or accruing prior to the date of the Closing, except as otherwise expressly provided in the Purchase Agreement. Except as expressly set forth in the provisions of the Bidding Procedures Order relating to cure claims with respect to the Designated Agreements, the sole amounts necessary

11

under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Designated Agreements shall be established in accordance with such procedures, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and the assignment to Purchaser of the Designated Agreements.

14. Each non-debtor party to an Designated Agreement is forever barred, estopped and permanently enjoined from (a) asserting against the Debtors or Purchaser or the property of any of them, any default arising prior to or existing as of the Closing or, against Purchaser, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors; and (b) imposing or charging against Purchaser any assignment fees, increases or any other fees solely as a result of the Debtors' assumption, assignment and sale to Purchaser of the Designated Agreements. The validity of such assumption, assignment and sale of Designated Agreements shall not be affected by any dispute between the Debtors and any non-Debtor party to a Designated Agreement.

15. The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Designated Agreement shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Designated Agreements.

## Additional Provisions

16. This Order (a) shall be effective as a determination that, except for the Assumed Liabilities at Closing or as otherwise expressly provided for in this Order or in the Purchase Agreement, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated as set forth herein, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing

officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

17. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order and the Purchase Agreement.

18. All entities that are in possession of some, any or all of the Purchased Assets upon the Closing hereby are directed to surrender possession of the Purchased Assets to Purchaser at the Closing.

19. Except for the Assumed Liabilities or as otherwise expressly provided for in this Order or the Purchase Agreement, Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to their business or the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, Purchaser shall not be liable for any claims against the Debtors or any of its predecessors or affiliates with respect to their business, the Purchased Assets or otherwise and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or their business or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising,

13

accruing or payable under, out of, in connection with, 'or in any way relating to the operation of their business or the Purchased Assets prior to the Closing. Purchaser has given substantial consideration under the Purchase Agreement for the benefit of holders of Interests. The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of Purchaser, which releases shall be deemed to have been given in favor of Purchaser by all holders of Interests against the Debtors, their business and the Purchased Assets.

20. Except for the Assumed Liabilities or as otherwise expressly provided for in this Order or the Purchase Agreement, all persons holding Interests against or in the Debtors, their business or the Purchased Assets of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state and federal, state and local officials maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) hereby are forever barred, estopped and enjoined from asserting, prosecuting or otherwise pursuing such Interests of any kind or nature whatsoever against Purchaser, its property or their successors and assigns or the Purchased Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtors, the Debtors' bankruptcy estates, their respective officers, directors or shareholders, their business or the Purchased Assets.

21. This Court shall retain jurisdiction to enforce and implement the terms and provisions of this Order, the Purchase Agreement (and all agreements ancillary to the Purchase Agreement), all amendments thereto, any waivers and consents thereunder, each of the agreements executed in connection therewith and the Designated Agreements in all respects,

including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser; (b) compel performance of other obligations owed by or to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreement, except as may otherwise provided therein; (d) resolve any disputes relating to a Designated Agreement (including the enforceability and interpretation thereof) or the assumption, assignment and sale thereof; (e) interpret, implement and enforce the provisions of this Order; (f) protect Purchaser against (i) any of the Excluded Liabilities, (ii) the assertion of any Interests against the Purchased Assets, of any kind or nature whatsoever, and (iii) any holder of a claim against the Debtors' estates that seeks to interfere with the business of the Purchaser; and (g) to enforce and compel payment of the Committee Carve-Outs[4] provided for in prior Orders of the Court with respect to the professional fees of the Official Joint Committee of Unsecured Creditors (the "Committee") by the Purchaser as a condition of closing and consummating the sale of the Purchased Assets pursuant to this Order.

22. The transactions contemplated by the Purchase Agreement are undertaken by Purchaser without collusion and in "good faith," as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions provided for in the Purchase Agreement shall not affect the validity of the sale (including the assumption, assignment and sale of any of the Designated Agreements), unless such authorization is duly stayed pending such appeal.

23. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their bankruptcy

---

[4] As used herein, the term Committee Carve-Outs shall collectively mean (1) the Committee Carve-Out, as defined in the Court's Order Approving Bidding Procedures [C.P. # 79], and (2) the Additional Committee Carve-Out in the amount of $25,000.00 provided for in the Order Approving (I) Settlement Term Sheet And (II) Settlement Between Evolution Lighting, LLC And The Official Joint Committee Of Unsecured Creditors In Furtherance Of Evolution's Motion To Credit Bid, As Supplement (the "Settlement Order") [D.E. #140].

estates and their creditors, Purchaser and its successors and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest in the Debtors' business and/or the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. This Order and the Purchase Agreement: (a) shall be binding in all respects upon all creditors of and holders of equity interests in the Debtors (whether known or unknown), any holders of Interests, all non-debtor parties to the Designated Agreements, all successors and assigns of Purchaser, the Debtors and their affiliates and subsidiaries and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases; and (b) shall not be subject to rejection.

24. The Purchase Agreement and any related or ancillary agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors.

25. The Debtors shall remain responsible for paying all quarterly fees due and owing to the United States Trustee's Office ("UST") through the closing of the case, and the obligation to pay these outstanding UST fees shall also constitute an assumed liability of the Purchaser. The Debtors shall retain as an excluded asset from the sale of their assets such amount as is necessary to cover any outstanding UST quarterly fees through the closing of the case.

26. Notwithstanding anything to the contrary in the Purchase Agreement and any previous Orders of this Court, the Purchaser shall assume and pay the Committee Carve-Outs as part of the closing and consummation of the sale of the Purchased Assets pursuant to this Order, which sale proceeds representing the Committee Carve-Outs shall be paid at closing to Genovese, Joblove & Battista, P.A. (the "GJB Law Firm"), as counsel for the Committee, for

deposit into the trust account of the GJB Law Firm, subject to disbursement upon further order of the Court; provided, however, that nothing herein shall preclude (i) the parties from seeking to surcharge Wachovia or (ii) in the event that the parties are successful in surcharging Wachovia, the Purchaser from being reimbursed for the Committee Carve-Outs.

27. Notwithstanding anything contained in Bankruptcy Rules 6004(h), 6006(d) or otherwise to the contrary, and subject to payment of the Committee Carve-Outs, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transactions contemplated under the Purchase Agreement, and the Debtors and Purchaser intend to consummate the transactions contemplated under the Purchase Agreement as soon as possible, subject, however to their rights under the Purchase Agreement.

28. <u>Post-Closing Obligations of the Debtors</u> – No later than June 1, 2010, the Debtors shall (a) file a motion to either dismiss these cases or convert these cases to cases under Chapter 7 of the Bankruptcy Code; and (b) file a motion to assume or reject the Debtors' lease with MG Property, Ltd.

### 

Submitted by:
Stephen P. Drobny, Esq.
SHUTTS & BOWEN LLP
*Attorneys for Debtors-in-Possession*
1500 Miami Center
201 S. Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 415-9873

Attorney Drobny shall serve a conformed copy of this Order upon receipt of same on all parties in interest and shall file a Certificate of Service with the Court.